# Mott, Appellant, *v.* Pennsylvania Railroad Company.

*Negligence—Railroads—Passengers—Fall from platform—Death —Nonsuit.*

A nonsuit was properly entered in an action to recover damages for the death of plaintiff's husband, a passenger on defendant's train, where it appeared that he had fallen from an unenclosed platform of a car upon which he had voluntarily taken his position while the train was in rapid motion and was killed either by the fall or by other passing trains; that the conductor was not informed of his disappearance until the train had gone a considerable distance, and within a minute or two of the time when it reached the next station and immediately made an investigation which disclosed nothing as to the occurrence; that while the train was not stopped for the purpose of searching for the missing passenger, immediate notice was given at the next station; that there were a number of tracks at the point where deceased fell, and that a large number of trains were constantly passing and repassing; and it did not appear that the train could have been stopped immediately upon discovering the accident without imperiling the safety of the other passengers.

Argued March 30, 1914. Appeal, No. 81, Jan. T., 1914, by plaintiff, from order of C. P. No. 4, Philadelphia Co., June T., 1912, No. 2973, refusing to take off nonsuit in case of Anna Mott v. Pennsylvania Railroad Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries.
CARR, J., filed the following opinion sur plaintiff's motion to take off nonsuit:

The plaintiff is the widow of Emil Mott, deceased, who upon Sunday evening, August 6, 1911, was a passenger in a train of the defendant company, and who came to his death under distressing circumstances, between the North Philadelphia station and Twentieth street in this city. Upon the morning of that day he was one of a party which had journeyed in an automobile to the Delaware Water Gap, and he fell ill after his arrival and vomited, the effect of traveling upon rough roads. He thereupon decided to return home by rail and boarded a train at Stroudsburg at 5:20 p. m. It was made up of eight or nine coaches, some of which had enclosed platforms and others without. Mott sat toward the front on the left side of the smoking car, which was next but one to the engine. McCarthy, a witness called for the plaintiff, but to whom the deceased was a stranger, noticed that between Stroudsburg and the North Philadelphia station, Mott had made use of the water closet several times, and from the sounds heard it appears that the disturbed condition of his stomach had not abated. The train arrived at the North Philadelphia station at 8:56, being a few minutes late on its schedule time, and just as it pulled out, McCarthy saw the deceased leave his seat and step upon the platform which was not enclosed. McCarthy saw Mott standing upon the platform holding the hand rails and facing north. McCarthy left his seat and went toward the door, and did not see Mott, and becoming alarmed for his safety, sought the conductor, and after passing through several coaches, found him in the next to the last car, taking tickets. McCarthy testified that he "told him that that fellow up in front was gone. He wanted to know who. I said the fellow that sat opposite me." By this time the train was at a signal tower known as N. G., which is on the hill over the tunnel on the east drive of Fairmount Park at the east end of the bridge crossing the Schuylkill river. In order to inform himself as to what had happened, the conductor

immediately returned to the smoking car, and searched for baggage or other belongings of the deceased, and inquired of other passengers whether they had seen him. He did not succeed, however, in learning what had become of Mott, and whether he had stepped from the train as it was leaving the North Philadelphia station or had fallen off. By this time the train was at Signal Tower No. 3, which is near the Zoological Garden or the tunnel on the west side of the Schuylkill river, approaching the main line tracks, and the conductor said to McCarthy, "There is nothing I can do now, and I will report it at the West Philadelphia station." Within a few seconds this station was reached, and the conductor immediately informed an usher that there was a report that a passenger had fallen off at the North Philadelphia station. This was at 9 : 06 p. m., and at 9 : 10 the train reached Broad Street station, and the conductor notified the station-master to the same effect within two or three minutes after arrival.

About 9 : 45 p. m. several boys were at Twenty-second street and Sedgley avenue on a vacant lot on the north side of the railroad tracks near Fite & Arbelo's lumber yard, which is on the south side of the tracks. The boys were about a quarter of a square from the tracks and while they were playing on or about a log on the lot, they heard cries or moans coming from the east, from the direction of Fite & Arbelo Company's yard. They walked toward the tracks and saw a man about half a square from the saw mill walking on the tracks from the west, and becoming frightened, they returned to the lot. Opposite Fite & Arbelo's lumber yard, are four tracks, the southernmost being known as No. 1 and the northernmost No. 4 and two are for passenger travel and two for freight. A freight train passed eastward on track No. 2 and the boys returned to the track towards the place from which the cries or moans came, and by the light from the windows of a passenger train also passing east, they saw Mott's dismembered body. It was on the

second rail as the tracks are approached from the south. The boys then sought a policeman and found two at Marjie street and Sedgley avenue, one of whom fixed the time at 9 : 35. One went with the boys to where the body lay while the other called the patrol, which shortly arrived. The officer in charge of it states that he received the patrol call at 10 : 30. Before the patrol wagon arrived, a track walker of the defendant company appeared, and assisted in the removal of the body. It was shown that at this point between 9 p. m. and 10 : 50 p. m., on the night of the accident, sixteen trains passed on all four tracks. From the signal tower known as G. D. at the North Philadelphia station, to the place opposite Fite & Arbelo's lumber yard, where Mott's body was found, the distance is 3,000 feet and one mile and 2,280 feet east of N. R. From the signal tower G. D. to the signal tower at the east end of the bridge known as N. R., the distance is two miles.

The record shows that this section of the defendant's road is protected by the automatic block signal system, and that the presence of the train automatically sets an absolute stop signal for the block in back of the train and a caution signal for the second block back of the train. At the point where Mott was last seen by McCarthy as the train was about pulling out from the North Philadelphia station, a siding is the northernmost track and the track upon which the train was proceeding toward Philadelphia is the next track to the south.

The contention of the plaintiff is that the defendant is liable for Mott's death, if after knowledge or reason to believe that he was in a place of peril on their tracks, they failed to exercise reasonable care to save him from death or further injury. It does not appear however, that it was the duty of the conductor under the circumstances of the case, to stop the train. Nor does it appear that Mott's rescue could have been made without peril to the other passengers. It is not shown that other trains could have been prevented from passing until Mott was

safely off the tracks. The conductor did not have notice that Mott had fallen from the moving train in a danger-ous place. Moreover, it is plain that the decedent was guilty of contributory negligence, for it is negligence to stand on the platform steps of a moving train, and it was not shown that the water closet opposite Mott's seat was locked. No evidence of negligence on the part of the defendant was shown. It is a question of careful rail-road management and it was not shown that the move-ment of the trains between West Philadelphia and North Philadelphia stations could have been suspended from the time of the reported disappearance of Mott was an-nounced to the conductor. No evidence was produced by the plaintiff to show that it was improper railroad man-agement not to have suspended the passage of all trains in that section. Nor is a connection proved of the de-fendant's negligence with Mott's death. It was not shown that Mott could have been found in time to save his life, and the plaintiff's contention of alleged negli-gence cannot be sustained without the use of many in-ferences.

The court refused the motion to take off the nonsuit. Plaintiff appealed.

*Error assigned* was in refusing to take off the nonsuit.

*Thomas F. Gain,* with him *Alfred L. Cameron,* for ap-pellant.

*John Hampton Barnes,* for appellee.

PER CURIAM, April 27, 1914:

A clear and concise statement of the facts developed at the trial appears in the opinion of the learned judge of the Common Pleas dismissing the motion to take off the nonsuit. The only ground on which the defendant could be held liable was that the conductor was negli-gent in not stopping the train after he had investigated

the report that a passenger who had gone on the platform after the train had started from the, station, was missing. His investigation which was made promptly and intelligently disclosed nothing as to the actual occurrence. When it was completed the train was at a place where it could not be stopped with due regard to the safety of the passengers and it was within a minute or two of the next station at which he gave notice that would start an investigation. In the absence of evidence that the defendant in any way caused the fall of the deceased from the train or omitted to do anything which it could reasonably be required to do under the circumstances, there was nothing to submit to the jury.

The judgment is affirmed.